TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
RANEE A. KATZENSTEIN (Cal. Bar No. 187111)
Assistant United States Attorney
Chief, Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2432
     Facsimile: (213) 894-6269
     E-mail:    ranee.katzenstein@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>                 v.<br><br>BONIFACIO JASTILANA MARINAS,<br><br>            Defendant. | No. CR 20-587-FMO<br><br>GOVERNMENT'S COMBINED <u>(1) CONCURRENCE IN THE FINDINGS OF THE PRESENTENCE REPORT; AND (2) POSITION RE SENTENCING</u><br><br>Hearing Date: Jan. 13, 2022<br>Hearing Time: 3:00 p.m.<br>Location:     Courtroom of the<br>              Hon. Fernando M.<br>              Olguin |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Ranee A. Katzenstein, hereby files its Combined (1) Concurrence in the Findings of the Presentence Report; and (2) Position re Sentencing ("Sentencing Position").

    This Sentencing Position is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

| | | |
|---|---|---|
| 1 | Dated: January 5, 2022 | Respectfully submitted, |
| 2 | | TRACY L. WILKISON<br>United States Attorney |
| 3 | | |
| 4 | | SCOTT M. GARRINGER<br>Assistant United States Attorney<br>Chief, Criminal Division |
| 5 | | |
| 6 | | /s/ *Ranee A. Katzenstein*<br>RANEE A. KATZENSTEIN |
| 7 | | Assistant United States Attorney |
| 8 | | Attorneys for Plaintiff<br>UNITED STATES OF AMERICA |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

In less than four months, Bonifacio Jastilana Marinas ("defendant") stole over $500,000 from California – money that was meant for state residents who were truly in need because they had lost their jobs due to the COVID-19 pandemic.  Unlike those needy persons, defendant is a college-educated professional who lives in a large home with a pool (and in which he may hold an interest through his wife and/or a trust), who receives financial support from his family and who "appears [to] ha[ve] undisclosed financial resources from which his family pays the household mortgage and bills, as well as [an] undisclosed interest in a California corporation."  (Dkt. No. 25 (Presentence Report ("PSR")) ¶¶ 61, 84-85.)

Although he stole over half a million dollars of the public's money, defendant asks this Court for a sentence so lenient that it does not include any custody.  (Dkt. No.30 (Defendant's Sentencing Memorandum) at 4, 9.)  Defendant bases this request on his explanation for his crime.  He claims he engaged in his fraud scheme not because of greed but because he feared the economic consequences that might flow from the COVID crisis and wanted to be able to support his family. (Dkt. No. 30 at 3.)  Defendant's effort to justify his crime is ironic because the money he stole was intended for families that were <u>actually</u> suffering from hardships caused by the pandemic, which his family was not.  At a time when communities needed to look out for one another as we all faced a national crisis, defendant put his own interests before those of anyone else, including people far more needy than he was, and took for himself – through criminal acts – money that was desperately needed by others.

Defendant says he was not motivated by greed but, at the very least, even his own explanation shows that he acted out of selfishness.

Defendant's crime was serious. The public counts on the Courts to help deter such crimes by imposing significant consequences on people who commit them. The Court should do so in this case. The government respectfully submits that a 33-month sentence, which is the low end of the sentencing guidelines range to which the parties stipulated in the plea agreement and is the sentence recommended by the Probation Officer, appropriately balances the aggravating and mitigating factors in this case.

## II.   STATEMENT OF FACTS

Defendant admitted the following facts, among others, in his written plea agreement and under oath in open court at the hearing on his change of plea:

> Defendant filed and caused the filing with California's Employment Development Department ("EDD") of fraudulent unemployment insurance ("UI") benefit claims that falsely asserted the named claimants were self-employed real estate agents who had been negatively affected by the COVID-19 pandemic, thereby triggering eligibility for UI benefits under the Pandemic Unemployment Assistance ("PUA") provision of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). The UI claims submitted in furtherance of defendant's scheme falsely reported to EDD that the named claimants resided and worked as real estate agents in Los Angeles County. To the contrary, and as defendant then well knew, many of the persons named as the claimants had no residential history in Los Angeles County or, indeed, anywhere in the State of California, but

2

rather resided in Saipan or the Philippines; had no employment history in Los Angeles County or anywhere in the State of California; and were not registered with California as real estate agents.  By falsely asserting that the claimants worked in the State of California, defendant falsely represented that the named claimants were entitled to UI benefits administered by EDD when, as defendant then new, they were not.

As a result of the fraudulent UI benefit claims that defendant filed and caused to be filed, the EDD authorized Bank of America ("BofA") to issue Electronic Bill Payment ("EBP cards") in the names of the named claimants.  To ensure that he received the UI benefits, defendant listed and caused to be listed on the fraudulent claim applications his home address as the address for each of the named claimants. Defendant knew that, by doing so, defendant would cause BofA to mail the EBP cards issued to the named claimants to defendant's home address.

After he received the EPB cards issued as a result of the fraudulent UI benefits claims that he submitted and caused to be submitted to EDD, defendant used the cards and caused the cards to be used to withdraw the UI benefits funds that were provided based on the fraudulent applications.

Through this scheme, defendant caused approximately 85 fraudulent PUA claims to be filed with EDD resulting in losses to EDD and the United States Treasury of at least $516,244.

(CR 6 (Plea Agreement (Exhibit B: Statement of Facts); see also PSR ¶¶ 10-23.)

3

**III. CONCURRENCE IN THE FINDINGS OF THE PRESENTENCE REPORT**

The government concurs in the findings of the Presentence Report prepared by the Probation Office in this case and disclosed on May 13, 2021. (Dkt. No. 25.)

**IV. GOVERNMENT'S POSITION RE SENTENCING**

As explained in the following discussion, the government's recommendation that defendant be sentenced to 33 months in custody is based on an evaluation of the advisory sentencing guidelines and the other § 3553(a) factors.

    **A.   Advisory Sentencing Guidelines**

Defendant and the government stipulated in the plea agreement that the following advisory sentencing guidelines apply:

| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
|---|---|---|
| Specific Offense Characteristics<br><br>Loss greater than $250,000 but less than $550,000 | +12 | U.S.S.G. § 2B1.1(b)(1)(G) |
| Unauthorized use of means of ID to obtain other means of ID and/or possession of means of ID that were unlawfully produced by use of another means of ID | +2 | U.S.S.G. § 2B1.1(b)(11)(C) |
| Offense involves conduct described in 18 U.S.C. § 1040 | +2 | U.S.S.G. § 2B1.1(b)(12) |
| Acceptance of Responsibility | -3 | U.S.S.G. § 3E1.1(a), (b) |
| TOTAL OFFENSE LEVEL | 20 | |

(Dkt. No. 6 at ¶ 13.)

Accordingly, the parties stipulated that defendant's total offense level is 20. (Id.) The Probation Officer agrees with this calculation. (PSR ¶¶ 30-43.) The parties agreed not to seek the

4

imposition of any other specific offense characteristics (CR 6 ¶ 13.), and the Probation Officer agrees that no other adjustments apply (see PSR ¶¶ 36-46).

**B. Analysis of the § 3553(a) Factors**

The factors to be considered when imposing sentence, as set forth in 18 U.S.C. § 3553(a), include:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed –

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct; [and]

(C) to protect the public from further crimes of the defendant . . .

(3) The kinds of sentences available;

(4) [the applicable sentencing guidelines];

(5) [the applicable sentencing guidelines policy statement];

(6) The need to avoid unwarranted sentence disparities among defendants who have been found guilty of similar conduct; and

(7) The need to provide restitution to the victims of the offense.

18 U.S.C. § 3553(a).

Factor 4 (the applicable sentencing guidelines) was discussed above. The remaining § 3553(a) factors are discussed below.

1. Nature and Circumstances of the Offense

Defendant perpetrated a scheme to defraud the state of California of monies that were intended to be used to help persons

who had lost their jobs through no fault of their own. The scheme also exploited for criminal purposes the mechanisms put in place by EDD to help unemployed workers more easily apply for these benefits – for example, on-line applications and rapid processing of applications. Because these mechanisms make it easy to obtain UI benefits fraudulently, and make it hard to determine who has actually committed the fraud, imposing a sentence that will deter others from perpetrating similar crimes is especially important in cases involving UI benefits fraud.

        2.   History and Characteristics of Defendant

Defendant, 51, is a college graduate and a licensed real estate agent/broker. (PSR ¶¶ 70-71.) He has been married for 25 years and has three adult sons. (PSR ¶ 59.)

Defendant claims that he committed his offense because he wanted to have money to spend on his family. (Dkt. No.30 at 4, 9.) According to defendant, this is somehow not only "not greed" but — to the contrary — is a mitigating factor. The Court should reject defendant's spin on his crime. Defendant's motive in committing his crime was no different than the motive of every person who commits a financial fraud, namely, to take money that doesn't belong to him and use it as he chooses.[1] Far from being mitigating, defendant's theft of public money earmarked to help persons truly suffering from the economic downturn caused by the COVID pandemic shows a selfishness that is a significant aggravating factor.

---

[1] Even defendant admits that "this is not an excuse for his behavior, as many people were experiencing the same dire circumstances . . . ." (Dkt No. 30 at 4.)

6

### 3. <u>Goals of Sentencing</u>

Defendant has accepted responsibility for his offense conduct. Defendant did so early, although that was undoubtedly due to the overwhelming nature of the evidence against him. Still, these facts and defendant's age and lack of any other criminal history suggest that defendant presents a reduced risk of recidivism.

But addressing the risk of recidivism is only one of the goals that Congress, through Section 3553(a)(2), has required this Court to consider when determining the sentence to be imposed. In addition, Section 3553(a)(2) requires the Court to consider the seriousness of the offense, the need to promote respect for the law and provide just punishment for the offense, and the need for general deterrence of criminal conduct.

These additional factors support the imposition of a custodial sentence in this case. As noted above, defendant's offense was serious, resulting in substantial financial harm to EDD and the United States Treasury. More significantly, the need for general deterrence is particularly pronounced in this case to discourage persons from fraudulently applying for UI benefits. The incentive to engage in UI benefits fraud has increased since March 2020, when programs were enacted that expanded eligibility for UI benefits to address the economic harms caused by the COVID-19 pandemic. Deterrence depends on a strong message from the justice system that exploiting these expanded programs by cheating state unemployment

agencies out of the monies set aside to help persons truly in need will result in a significant prison sentence.[2]

**C.  Government's Sentencing Recommendation**

Defendant's post-acceptance advisory guideline offense level is 20. The fact that he has no prior criminal history is already taken into account by his being in Criminal History Category I. See U.S.S.G. § 4A1.3(b)(2)(A) p.s. ("A departure below the lower limit of the applicable guideline range for Criminal History Category I is prohibited.") (addressing "Standards for Downward Departure" based on "over-represent[ation] of the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes"). Accordingly, defendant's advisory sentencing guideline range is 33-41 months.

The government submits that a sentence at the low end of the advisory sentencing range will appropriately balance the mitigating and aggravating factors discussed above.[3] In compliance with its obligations under the plea agreement, and in accord with the recommendation of the Probation Officer, the government recommends

---

[2] Judge Snyder recently highlighted the seriousness of frauds causing losses to EDD and the need to deter such crimes when she imposed sentence on three defendants who, like defendant Marinas, pleaded guilty to mail fraud arising from a scheme to submit false UI benefits claims. See United States v. Bon et al., CR 19-403-CAS. The Bon defendants' scheme caused losses ($104,570) that were a small fraction of the loss ($516,244) caused by defendant Marinas; each of the Bon defendants received only a small portion of that reduced amount; and two of the Bon defendants had no criminal history. Nonetheless, because of the seriousness of the offense, on November 15, 2021, Judge Snyder sentenced each of the Bon defendants to a year and a day in custody.

[3] The Probation Officer "has not identified any factors that would warrant a recommendation for a variance outside the advisory guideline system." (PSR ¶ 104.)

8

that defendant be sentenced to 33 months, the low end of applicable guidelines range.

**V.   RESTITUTION**

The government concurs in the Probation Office's finding that restitution is mandatory in this case and defendant should be ordered to pay restitution in the amount of $516,244 to EDD.  (PSR ¶¶ 100-102.)

**VI.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court:

- Find that defendant's post-acceptance advisory sentencing guidelines offense level is 20;
- Sentence defendant to 33 months in custody, the low end of the applicable post-acceptance guidelines range, to be followed by three years of supervised release; and
- Order that defendant pay restitution in the amount of $516,244 to EDD.

 Dated: January 5, 2022              Respectfully submitted,

                                     TRACY L. WILKISON
                                     United States Attorney

                                     SCOTT M. GARRINGER
                                     Assistant United States Attorney
                                     Chief, Criminal Division


                                        /s/ *Ranee A. Katzenstein*
                                     RANEE A. KATZENSTEIN
                                     Assistant United States Attorney

                                     Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA

9